IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| RANDY DUNN, | No. 6:14-cv-00266-HZ |
| Plaintiff, | OPINION & ORDER |
| v. | |
| CAROLYN COLVIN, Acting Commissioner, Social Security Administration, | |
| Defendant. | |

Tim Wilborn
Wilborn Law Office, P.C.
P.O. Box 370578
Las Vegas, NV 89137

    Attorney for Plaintiff

S. Amanda Marshall
U.S. Attorney's Office
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

1 - OPINION & ORDER

Jordan D. Goddard
Social Security Administration
Office of the General Counsel
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

    Plaintiff Randy Dunn ("plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). Because the Commissioner's decision is supported by substantial evidence, the decision is AFFIRMED.

## BACKGROUND

    Born in August, 1966, plaintiff was 37 years old on his alleged onset date of February 23, 2004. Tr. 668. He speaks English, attended special education classes in school, and has 17 years' experience as a glass worker and glazer installing windows in automobiles and in homes. Tr. 190-91, 669, 707. Plaintiff filed applications for SSI and DIB on June 17, 2004, alleging disability due to a combination of impairments including Raynaud's Phenomenon in both hands, lumbar spondylosis, bipolar disorder, attention deficit hyperactivity disorder ("ADHD"), anxiety, and learning disorders. Tr. 113-15, 190, 749.

    The Commissioner denied plaintiff's applications initially and upon reconsideration, and he filed a civil action in this court. The parties submitted a stipulation for remand to the district court, and the court issued an order remanding the case to the Agency on October 5, 2011. Tr.

771-75. The remand order directed the Administrative Law Judge ("ALJ") to provide an opportunity for a new hearing and issue a new decision after reassessing and addressing "all of the medical evidence of record" as well as the lay testimony, plaintiff's credibility, and plaintiff's residual functional capacity. Tr. 771-72. After an administrative hearing was held on December 6, 2012, ALJ John Madden issued a decision finding plaintiff not disabled on January 30, 2013. Tr. 749-59. The Appeals Council declined to assume jurisdiction on December 18, 2013, making the ALJ's decision the final Agency decision.  Tr. 738-41; 20 C.F.R. § 422.210 (2014). This appeal followed.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability.  Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to

preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner.

In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141–42; Tackett v. Apfel, 180 F.3d 1094, 1098–1100 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

The ALJ performed the sequential analysis. At step one, he found that plaintiff had not engaged in substantial gainful activity since his alleged onset date. Tr. 751. At step two, the ALJ found plaintiff had the following severe impairments: Raynaud's disease, mild spondylosis at L5-S1, bipolar disorder, ADHD, learning disorder not otherwise specified ("NOS"), and a history of alcohol and marijuana abuse. Tr. 752. At step three, the ALJ found that plaintiff's impairments did not meet or medically equal a listed impairment. Id.

The ALJ next assessed plaintiff's RFC and determined that plaintiff retained the ability to perform a full range of work at all exertional levels with the following limitations: he can engage in frequent, but not constant, handling and fingering bilaterally; he must avoid even moderate exposure to extreme cold or vibration; and he is limited to no more than simple, repetitive tasks

of 1-2 steps that involve limited public contact. Tr. 753-54. At step four, the ALJ found that plaintiff is unable to perform his past relevant work as a glass installer and glazer. Tr. 757. At step five, the ALJ concluded that plaintiff could perform jobs that exist in significant numbers in the national economy, including cleaner, housekeeping cleaner, and cafeteria attendant. Tr. 758. Accordingly, the ALJ found plaintiff was not disabled. Tr. 758-59.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bray v. Comm'r, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. Id. (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); see also Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Id.; see also Batson, 359 F.3d at 1193. However, this Court cannot now rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. Bray, 554 F.3d at 1225-26 (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (citing same).

## DISCUSSION

5 - OPINION & ORDER

Plaintiff argues that the ALJ erred by (1) improperly evaluating the medical record; (2) rejecting his subjective symptom testimony; (3) rejecting the lay opinion evidence; and (4) improperly relying upon the VE testimony. Because the ALJ's decision was supported by substantial evidence, his decision is affirmed.

I.   The ALJ's Evaluation of the Medical Evidence

Plaintiff argues that the ALJ failed to properly evaluate the medical evidence and erred in rejecting the opinions of multiple medical professionals. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. Carmickle v. Comm'r, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991).

If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. Lester, 81 F.3d at 830. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific,

6 - OPINION & ORDER

legitimate reasons" for discrediting the examining physician's opinion. Lester, 81 F.3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008).

    1.  Joseph Barrett, M.D., and Mary Teixeira, LCSW

Plaintiff first argues that the ALJ improperly rejected the opinion of treating psychiatrist Joseph Barrett and treating counselor Mary Teixeira. Pl.'s Br. 13. Ms. Teixeira completed, and Dr. Barrett signed, a questionnaire concerning plaintiff's psychiatric and psychological impairments. Tr. 365-72. Both Dr. Barrett and Ms. Teixeira opined that plaintiff would have multiple work-related mental limitations in the "moderate" to "marked" range. Tr. 370-72. These providers opined that plaintiff would experience episodes of deterioration or decompensation in a work-like setting and that he was incapable of even "low stress" work on an ongoing basis. Tr. 370-71. They also noted that plaintiff would likely miss work more than three times each month due to his impairments or treatment. Tr. 372.

The ALJ gave limited weight to these opinions. Tr. 31-32.[1] First, he noted that their assessment was contradicted by the state agency physicians, who reviewed the medical record and opined that plaintiff was much less impaired than indicated in Ms. Teixeira's questionnaire. Tr. 34, 353-55. For example, consultative psychologist Robert Hentry, Ph.D., opined that plaintiff was not significantly limited in most areas of mental functioning, and at most moderately limited in his ability to understand and remember detailed instructions. Tr. 353-54. Because Dr. Barrett's and Ms. Teixeira's opinion was contradicted by other medical evidence in

---

[1] The ALJ discussed these opinions in his written decision dated June 11, 2007 (Tr. 23-41) which is incorporated by reference into the January 30, 2013 decision.

7 - OPINION & ORDER

the record, the ALJ was required to provide specific, legitimate reasons for rejecting it. Lester, 81 F.3d at 830.

The ALJ provided several reasons for rejecting the opinions of Ms. Teixeira and Dr. Barrett. Tr. 32. First, the ALJ found that the functional limitations they assessed were inconsistent with plaintiff's GAF score of 52, which indicates only moderate impairment in mental functioning. Id. Ms. Teixeira and Dr. Barrett, however, assessed several GAF scores, including scores as low as 48, indicating serious symptoms and an inability to perform work, consistent with the overall assessment of Ms. Teixeira and Dr. Barrett. Tr. 334. Because plaintiff's GAF scores fell within a range that indicates serious mental limitations, singling out of the GAF score of 52 was not a specific, legitimate reason to reject the opinion of Ms. Teixeira and Dr. Barrett.

Second, the ALJ found that Ms. Teixeira and Dr. Barrett's opinion was inconsistent with the medical record as a whole, which showed "no reason that [plaintiff] could not handle simple tasks." Tr. 52. Inconsistency with the medical record is a specific, legitimate reason for rejecting a physician's opinion. Tommasetti, 533 F.3d at 1040. Three months after their initial assessment, Ms. Teixeira discharged plaintiff and indicated that he had only mild symptoms, a GAF score of 65, and displayed "Good Progress" towards achieving stability on medication. Tr. 32, 419. Plaintiff's condition upon discharge contrasts with the earlier assessment of Dr. Barrett and Ms. Teixeira, and suggests that plaintiff is capable of performing work within the limitations articulated in the RFC. See Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001) (a treating physician's most recent medical reports are highly probative). The ALJ therefore provided a specific, legitimate reason for rejecting the opinion of Ms. Teixeira and Dr. Barrett. Tommasetti, 533 F.3d at 1040. Because the ALJ provided a legally sufficient reason for rejecting this medical

evidence, any further error in his reasoning was harmless. Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) ("an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion'"). The ALJ's evaluation of Ms. Teixeira's and Dr. Barrett's opinion is affirmed.

    2.  Brice Stanley, PA-C, and Lisa Steffey, D.O.

Plaintiff also argues that the ALJ improperly rejected the opinions of the functional assessment generated by Mr. Stanley and Ms. Steffey. Pl.'s Br. 14. Mr. Stanley was plaintiff's primary care provider and first treated him in February, 2004. Tr. 500-07. Mr. Stanley and Ms. Steffey completed and jointly signed a questionnaire regarding plaintiff's impairments, noting that plaintiff suffered from symptoms that would frequently interfere with attention and concentration; require multiple unscheduled breaks; and likely result in over three work absences per month. Tr. 639-46. These providers also noted that plaintiff could not meet the basic sitting, standing, and walking requirements of a full-time job and was essentially precluded from grasping objects. Tr. 502-07 (providers' statement that plaintiff is markedly limited in his ability to grasp, turn, and twist objects, and in his ability to use his fingers and hands for fine manipulation), 641-45.

The ALJ considered and rejected this opinion. Tr. 37, 756. First, the ALJ found that the report was prepared a full year after plaintiff's last examination with the providers. Tr. 755-56; Osenbrock, 240 F.3d at 1165. Second, the ALJ noted that the report was inconsistent with plaintiff's medical records and records of plaintiff's activities. Tr. 756. The ALJ may reject a treating physician's opinion when it conflicts with independent clinical findings. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). Further, the ALJ may reject a provider's opinion that is inconsistent with a claimant's activities. Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001).

Here, for example, independent medical records indicate that plaintiff was able to "chop wood, install fence posts, and load items into his pickup truck," and that he enjoyed archery. See Tr. 509, 570 (treatment note from October 22, 2007 stating that plaintiff was "recently splitting wood"), 625 (treatment note from Mark Belza, M.D., noting that plaintiff "was doing fairly well with his low back until … [h]e was planting some fence posts in his yard"), 888, 904 (note dated November 9, 2010, stating that plaintiff reported "hauling firewood"), 937 (November 19, 2009 treatment note stating that plaintiff "was loading wood"), 1100. The ALJ also noted that at plaintiff's more recent medical appointments, he was able to ambulate without assistance. Id.

The overall record of plaintiff's regular physical activities contrasts with the opinion of Mr. Stanley and Ms. Steffey that plaintiff could not perform even sedentary work, or use his hands for any significant grasping activity. While plaintiff notes that he suffered pain and limitations while performing the physical activities described above, the fact that plaintiff could perform these tasks at all controverts the extreme findings of Mr. Stanley and Ms. Steffey. Further, the record reflects that plaintiff exhibited "exaggerated pain behavior" at an examination, which diminishes the probity of plaintiff's allegations. Tr. 938. Further, while plaintiff reported pain attributed to hauling firewood in November, 2010, he told a pain specialist in October, 2011, that he continued to carry wood. Tr. 888, 904, 1100. On this record, because plaintiff's activities were arguably inconsistent with the limitations assessed by Mr. Stanley and Ms. Steffey, ALJ provided legally sufficient reasons for rejecting the opinions of these providers. Orn, 495 F.3d at 632; Rollins, 261 F.3d at 856.

The Court finds that the ALJ's interpretation of the evidence of plaintiff's physical activities was rational. Thus, while plaintiff provides an alternative interpretation of this evidence, the ALJ's finding that the opinions of Mr. Stanley and Ms. Steffey were inconsistent

with the evidence of plaintiff's regular physical activities is affirmed. Batson, 359 F.3d at 1193 (the ALJ's reasonable interpretation of the record must be upheld).

    3.  Sara Chernecki, M.D.

Plaintiff next contends that the ALJ erred in his rejection of Sara Chernecki, M.D. Dr. Chernecki examined plaintiff a total of three times for his hand condition. Tr. 33. On June 24, 2005, Dr. Chernecki completed a questionnaire regarding plaintiff's Raynaud's syndrome, a disease characterized by sensitivity to cold temperatures. See Tr. 244, 373-74. Dr. Chernecki opined that cold weather worsened plaintiff's symptoms. She opined that plaintiff would have marked limitations in grasping, twisting, and turning objects, and in using his fingers for fine manipulation in cold weather. Tr. 374-78. She also found that plaintiff would need to take about 3 unscheduled breaks of 30 minutes or more during a regular workday, and would likely be absent from work more than 3 times every month. Tr. 377. In 2007, Dr. Chernecki refused to sign a letter affirming these findings because she had not seen plaintiff since 2005. Tr. 498.

The ALJ accorded little weight to Dr. Chernecki's opinion. Tr. 32-33, 757. He found that it was "based on a limited relationship in that it is based on other treating sources' notes and mostly refers to claimant's limitations in cold weather—not his maximum capabilities." Id. The ALJ, moreover, formulated plaintiff's RFC to include the limitation that plaintiff should not be exposed to extreme cold or vibrations. Tr. 754. The ALJ therefore reasonably incorporated all of Dr. Chernecki's concrete limitations into the RFC, and was not required to provide further justification for rejecting her opinion. Although plaintiff provides an alternative interpretation of Dr. Chernecki's opinion, the ALJ's interpretation of the evidence is rational and is therefore upheld. Batson, 359 F.3d at 1193.

    4.  Examining psychologist Geoffrey Bartol, Ph.D.

Plaintiff also argues that the ALJ improperly rejected the opinion of clinical psychologist Geoffrey Bartol, Ph.D. Dr. Bartol performed a psychodiagnostic evaluation on January 6, 2004. Tr. 305. He opined that plaintiff had significant problems with sustained attention and concentration, and assessed a GAF score of 45. Tr. 309-10. Dr. Bartol examined plaintiff again on May 28, 2008. Tr. 540. After the second examination, Dr. Bartol found plaintiff was impulsive and displayed significant problems with sustained attention and concentration. Tr. 543. He opined that plaintiff could remember and understand short, simple instructions but would have increasing difficulty with more complex instructions. Id. Dr. Bartol assessed moderate to significant problems in sustaining concentration and attention and persisting in tasks, due to ADHD and bipolar disorder. Tr. 546. He stated that "[r]egarding work related activities; [plaintiff] is able to remember and understand, short simple instructions but would have increasing difficulty with more complex instructions because of difficulty concentrating." Tr. 546.

The ALJ credited Dr. Bartol's opinion, noting that despite his assessment of limitations in mental functioning, Dr. Bartol deemed plaintiff capable of "remembering and understanding 'short simple instructions'." Tr. 755. Dr. Bartol arguably indicated in his opinion that plaintiff was employable despite significant limitations. See Tr. 543. The ALJ incorporated Dr. Bartol's statement that plaintiff would have moderate difficulty sustaining tasks into the RFC by limiting plaintiff to performing only simple tasks. Tr. 755. While debatable, the ALJ's interpretation of Dr. Bartol's opinion is rational. See Batson, 359 F.3d at 1193. Further, plaintiff has not identified any concrete limitations assessed by Dr. Bartol that the ALJ failed to include in the RFC; the ALJ was therefore not required to provide justification for rejecting Dr. Bartol's assessment. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).

      5.  John Givi, Ph.D., Psy.D., and Mandy Davies, Ph.D.

Plaintiff also contends that the ALJ did not properly weigh the cognitive testing results of John Givi and Mandy Davies. Drs. Givi and Davis performed a neuropsychological screening and examination of plaintiff on March 14, 2007. Tr. 485-92. The ALJ noted that Drs. Givi and Davies both opined that plaintiff's testing results did not reflect his true functional abilities. Tr. 33. Further, Drs. Givi and Davies noted during the evaluation that plaintiff "smelled strongly of alcohol" and appeared extremely anxious. Tr. 33, 488, 491. As a result, Drs. Givi and Davies opined that "[t]he present assessment results are judged to be an under-estimate of the client's current functioning; the client's effort appeared good though he remained anxious throughout the testing." Tr. 33, 488. In sum, Drs. Givi and Davies estimated no more than mild limitation in any of plaintiff's functional areas that did not involve complex tasks and instructions. Tr. 495-96. The ALJ properly weighted this assessment, and the court upholds his rational conclusion. Batson, 359 F.3d at 1193. Plaintiff's argument that the ALJ failed to properly weigh other portions of Dr. Givi and Dr. Davies's opinion constitutes an alternative interpretation of the evidence that must be rejected in favor of the ALJ's rational construction of the evidence. Batson, 359 F.3d at 1193. The ALJ's evaluation of the medical evidence is affirmed.

II.    The ALJ's Assessment of Plaintiff's Credibility

Plaintiff next argues that the ALJ erred in rejecting his subjective symptom testimony. In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ determines whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of symptoms. Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). If such evidence exists, and barring affirmative evidence of

malingering, the ALJ must give clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. Id. at 1284; see also Lingenfelter, 504 F.3d at 1036. If the record contains affirmative evidence of malingering, the ALJ need only provide specific and legitimate reasons for an adverse credibility finding. Morgan v. Astrue, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ may consider many factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Tommasetti, 533 F.3d at 1039. Where the ALJ's credibility findings are supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). However, a general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); see also Morgan, 169 F.3d at 599.

At the hearing held February 6, 2007, plaintiff testified that he lost his job due to repeated absences that he attributed to depression. Tr. 670. Plaintiff testified that he has Raynaud's Phenomenon in his hands as a result of using a vibrating tool in his glass cutting work. Tr. 674. Plaintiff also testified that he suffers from bipolar disorder, has mood cycles from mania to depression approximately every week, and suffers two to three panic attacks per day that cause difficulty breathing. Tr. 677-79. He stated that, because of his hand condition, he could only lift 10 pounds and tends to drop objects. Tr. 714. Plaintiff testified that he spends most of the day

14 - OPINION & ORDER

lying down and can only walk for up to 15 minutes, stand for one hour, and sit for 30 minutes at a time. Tr. 709-11. At the hearing held on December 16, 2012, plaintiff testified that he continued to experience back pain with pain radiating down his right leg. Tr. 1092-1111. He also testified to difficulties with his memory. Id.

The ALJ considered plaintiff's testimony and found that it was not credible concerning the intensity, persistence, and limiting effects of his symptoms. Tr. 754-55. First, the ALJ noted record evidence of drug-seeking behavior despite relatively benign objective findings. Tr. 755-56. The ALJ may discount a claimant's credibility because of evidence that his pain complaints were motivated, at least in part, by drug-seeking. Edlund, 253 F.3d at 1157. Further, the ALJ may use ordinary techniques of credibility evaluation in assessing a claimant's subjective symptom testimony. Tommasetti, 533 F.3d at 1039. Here, in October of 2007, plaintiff told Ms. Steffey that he needed a refill of his narcotic pain medication because his mother's boyfriend had stolen his last prescription. Tr. 508, 755-56. At the hearing, however, plaintiff testified that he had asked for a refill because he was attempting to repay his mother after using her prescription narcotics in order to supplement his prescribed pain medication. Tr. 755-56, 1092-93. In April, 2012, plaintiff was caught "going to multiple providers and obtaining narcotics." Tr. 756, 878. Further, plaintiff's treating nurse practitioner assessed "[d]rug-seeking behavior." Tr. 756, 878. Using ordinary techniques of credibility evaluation, the ALJ properly found that the plaintiff's drug-seeking colored his testimony regarding the severity of his subjective symptoms and limitations. The ALJ's findings regarding plaintiff's drug-seeking behavior provide legally sufficient reason to discount his credibility. Edlund, 253 F.3d 1157. The ALJ's credibility finding is therefore affirmed.

III.     Lay Witness Testimony

15 - OPINION & ORDER

Plaintiff also argues that the ALJ erred because he improperly rejected the lay testimony of plaintiff's mother, Doris Davis. Pl.'s Br. 19. The ALJ must to provide "germane reasons" for rejecting lay testimony. 20 C.F.R. § 404.1513(d)(1); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ need not discuss every witness's testimony, and "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." Molina, 674 F.3d at 1114. Inconsistency with other evidence in the record is a germane reason for rejecting the testimony of a lay witness. Lewis, 236 F.3d at 511.

Ms. Davis submitted a third party function report to the Agency that described plaintiff's difficulties using his hands, concentrating, completing tasks, remembering, following instructions, socializing, sleeping, and carrying on a conversation. Tr. 149-57, 196-204, 228-29, 719-20. She stated that even when plaintiff was employed, he missed up to 3 days of work each month. Tr. 720.

The ALJ rejected Ms. Davis's statements because her observations regarding plaintiff's level of functioning were inconsistent with the objective medical evidence. Tr. 756-77. Inconsistency with medical evidence may constitute a germane reason to discount lay witness testimony. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). For example, while Ms. Davis described severe memory and concentration problems, these allegations were contradicted by the assessments of plaintiff's mental functioning recorded by Dr. Givi and Dr. Davies. See Tr. 595-97. The conflict between Ms. Davis's testimony and the medical record provides a germane reason for rejecting Ms. Davis's testimony. Bayliss, 427 F.3d at 1218.

Second, the ALJ found that Ms. Davis's statements appeared to rely upon plaintiff's own self-reporting, which the ALJ properly deemed not credible. Tr. 756-77. Reliance upon a

claimant's unreliable self-reporting may serve as a germane reason for rejecting lay testimony. Valentine, 574 F.3d at 694. Here, Ms. Davis reported that plaintiff's back pain was worsening based upon his subjective pain complaints. Because Ms. Davis relied upon plaintiff's discredited subjective reports in formulating her lay opinion, it was proper for the ALJ to reject her testimony. Valentine, 574 F.3d at 694. In sum, the ALJ provided two germane reasons for rejecting Ms. Davis's opinion, and his rejection of the lay testimony is affirmed.

IV.     The ALJ's RFC Assessment and Reliance on VE Testimony

Plaintiff argues, finally, that the ALJ improperly formulated plaintiff's RFC and thus submitted a deficient hypothetical to the VE that did not include all of plaintiff's limitations. Specifically, plaintiff contends that the ALJ failed to include in plaintiff's RFC limitations in sustaining concentration and attention. Pl.'s R. Br. 4. Plaintiff argues that the ALJ thus erred at step five because he relied upon VE testimony that was based on a deficient hypothetical.

As discussed above, the court finds that the ALJ did not err in his evaluation of the record evidence. Therefore, the hypothetical submitted to the VE properly included all of plaintiff's credible limitations. See Batson, 359 F.3d at 1197 (The ALJ is not required to incorporate limitations into the RFC that he properly finds not credible). The ALJ was thus entitled to rely upon the VE's testimony in formulating his decision that plaintiff is not disabled. Stubbs–Danielson, 539 F.3d at 1175–76 (where the hypothetical posed to the VE includes all of a claimant's credible limitations, the ALJ may reasonably rely upon the VE's testimony). The ALJ's opinion is affirmed.

CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Dated this ___3___ day of ___Feb___, 2015.

MARCO A. HERNÁNDEZ
United States District Judge

18 - OPINION & ORDER